(99 App. Div. 399)

## BOSSERT et al. v. ZIMMERMANN et al.

(Supreme Court, Appellate Division, First Department. December 23, 1904.)

1. CONTRACTS—AGREEMENT BETWEEN CREDITORS—CONSTRUCTION—PARTIES BEN-
   EFICIALLY ENTITLED.

   An agreement between A. and B. and the "undersigned creditors" of A.
   provided that A. would deliver a bond and mortgage to B., who should hold
   the same as trustee for such creditors of A. as "may become holders of cer-
   tificates hereinafter provided to be issued, and who shall sign this agree-
   ment." The creditors covenanted to severally finish their parts of the
   building on account of which their claims arose, as soon as the agree-
   ment in question should be executed, and an agreement should be en-
   tered into with plaintiffs for an adjustment of their claims against A.
   The moneys realized on a building loan provided for by the agreement
   were to be applied (1) to the payment of work and materials furnished
   and performed by other parties than those who signed the agreement,
   (2) to the payment of subsequently accruing claims of the parties signing
   the agreement, and (3) to the pro rata payment of other claims of the
   signers. *Held*, that plaintiff, who did not sign the agreement or rely
   thereon, but obtained other security, could not share in the benefits
   thereof.

   Patterson and Hatch, JJ., dissenting.

Appeal from Special Term, New York County.

Action by Louis Bossert and another against Jacob A. Zimmer-
mann and others. From a judgment dismissing the complaint,
plaintiffs appeal. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTER-
SON, O'BRIEN, and LAUGHLIN, JJ.

Alfred B. Cruikshank, for appellants.

John P. Everett, for respondents.

O'BRIEN, J. This is an action in equity to recover an amount
alleged to be due the plaintiffs out of a fund in possession of trus-
tees. The evidence shows that the defendant Preuss, who in the
year 1900 was engaged in erecting two buildings, made a contract
with the plaintiffs, dated April 30, 1900, for the purchase of "trim"
for the buildings for the sum of $11,000, which was to be paid as
the work progressed, and that thereafter the plaintiffs commenced
to deliver the material. In July, 1900, mechanics' liens were filed
against the buildings, and, among others, one by the plaintiffs, who
thereupon ceased to furnish the "trim." Subsequently an agree-
ment was made between Preuss and the plaintiffs to go on and
furnish the balance of the trim, which the latter agreed to do upon
condition that Preuss would give them notes, and, as security there-
for, a second mortgage on property on Frankfort street, New York
City, valued at $6,000, and, in addition, an order for $4,000 on the
Metropolitan Life Insurance Company, which company had made
a building loan contract with Preuss. The order for $4,000 was
intended to cover the material already furnished by the plaintiffs.
This second substituted contract between the parties was dated
July 18, 1900. In September of the same year an agreement was
made between "William J. Preuss, Jr., party of the first part, Jacob
A. Zimmermann" and others, "parties of the second part, and the

undersigned creditors of said Preuss, parties of the third part," wherein it was agreed among other things that:

"First. The party of the first part agrees to execute and deliver to the said parties of the second part his bond conditioned for the payment of Forty-one thousand dollars ($41,000) and interest, and a mortgage in which his wife shall join accompanying said bond and covering the premises hereinbefore described, and payable on demand. The parties of the second part shall, in fact, hold the said bond and mortgage as trustees for the existing creditors of the party of the first part who may become holders of certificates hereinafter provided to be issued, and who shall sign this agreement. Said trustees shall issue certificates to the existing creditors certifying that they are secured in such mortgage for the amounts specified in said certificates respectively. The said mortgage shall also secure the said trustees for any reasonable expenses that they might incur for counsel or for attorneys' fees or for disbursements; and said bond and mortgage shall be in form and contain clauses to be approved by Phillips & Avery, and which said mortgage shall be subject to the encumbrances now of record, and which shall contain a provision that the same is subject to the building loan mortgages now held by the Metropolitan Life Insurance Company and to all and any sums heretofore or hereafter advanced by said Company upon the same.

    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"Tenth. The parties of the third part, each for himself and not for the others, covenants and agrees to and with each of the parties of the first and second parts and each of the other parties of the third part, to severally finish the unfinished part of his or their contracts in connection with said premises for the furnishing of labor or materials or both, and as soon as this agreement has been executed by the existing creditors of said party of the first part and an agreement has been entered into as contemplated herein with said McGovern and Pugh & Company and with Louis Bossert, that said parties of the third part will promptly commence the completion and finishing of said contracts and the carrying out of same with despatch, providing always that the payments herein provided for shall be made and the terms of this agreement complied with. The intent being that as to the unfinished portion of said contracts sufficient money may be procured by the party of the first part from the balance of the present building loan to pay for labor and materials hereafter to be furnished so as to pay for the same in accordance with the terms hereof.

    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"Twenty-fifth. The balance of the moneys coming upon said building loan, to wit, the final payment of $32,500 and also any moneys upon any supplementary building loan which may hereafter be made and placed, and which shall come into the hands of the parties of the second part, shall be paid over by said parties of the second part as follows:

"1st. To the payment of work and materials which may hereafter be furnished and performed upon said operation by contractors and other parties other than those who have signed this agreement, unless said parties of the second part in their discretion may be able to arrange with such new contractors and parties to secure them in some other manner.

"2nd. To the payment of the parties signing this agreement for such work and materials as they may hereafter furnish and perform in order to complete their respective contracts with extra work and materials, if any; the intent hereof being that so far as shall be necessary the contractors other than those signing this agreement shall be paid for their work and materials before any payment is made to the parties of the third part, and that as between the parties of the third part those who hereafter furnish materials and labor to complete their contract upon said buildings and any extra labor and materials, and in arriving at the proportionate amounts which shall be paid to the respective creditors signing this agreement for new work and materials under their respective contracts or for any extra work and materials, in case of any dispute as to the value thereof, the same shall be left to the parties of the second part to apportion the same so as to achieve the object of this paragraph, and their decision as to such matters shall be final.

"3rd. The balance after making the payments aforesaid and all further sums to be received by way of rental or upon said mortgage upon the sale of said property or any part thereof or any properties for which the same may be exchanged shall be, after payment of expenses, disbursements and other charges hereinbefore provided, to be made by said trustees or which shall be necessary or proper in their discretion to be expended in the carrying out of their said trust, paid over to the creditors signing this agreement, pro rata, until the full amount of their respective claims with interest shall be paid, and the balance, if any, shall be paid over to the party of the first part."

The twenty-fifth paragraph is the one in dispute. The plaintiffs' theory is that they were entitled to share in the fund provided by this trust agreement, and were beneficiaries within its terms and scope.

It may be that a literal reading and construction of this twenty-fifth clause of the trust agreement would bring the Bosserts within its scope; but we think that, in view of the other provisions of the contract, and of the attitude which the Bosserts assumed towards other creditors, and particularly the fact that they obtained and relied upon other security, it was never intended by the parties to the agreement that the plaintiffs should derive any benefit therefrom; and it appears that the plaintiffs themselves never looked to nor relied upon the trust agreement, nor in any way acted upon the faith of it. Upon the latter subject we have the testimony of Jacob Bossert, who said:

"All along we knew nothing about this agreement. I had heard some talk about it shortly before the time that we made this agreement with reference to the collateral, but practically knew nothing about it, and did not rely upon it. I never bothered about the trust agreement; we had no faith in the trust agreement."

This evidence is corroborated by Preuss, who testified:

"I never discussed the trust agreement with him [Louis Bossert] at all. There was no discussion about that at all; there was no mention of the trust agreement. I believe he did not know that such a plan was on foot. * * * He wanted good collateral; he wanted security as good as cash."

It will be noticed, also, that the plaintiffs never signed the trust agreement, and therefore did not come within the definition of "the undersigned creditors of said Preuss, parties of the third part"; and it was only when, upon a foreclosure of the Frankfort street mortgage, there was a deficiency, that the plaintiffs looked around for the purpose of obtaining payment, and, upon reading the language of the trust agreement, concluded that they were within its terms, and would insist upon sharing in the fund which was realized and which was to be distributed under that agreement.

That the plaintiffs were not included is apparent, not only from the fact that they did not sign the agreement and of their refusal to have aught to do with it, but also from the first paragraph of the contract, which shows that the agreement which was thus executed by Preuss to the trustees was for the benefit of creditors who became "holders of certificates hereinafter provided to be issued and who shall sign this agreement"; and also from the tenth paragraph, which furnishes evidence that the creditor signing the trust agreement insisted, as a condition for executing it, an arrangement be

made with the plaintiffs for an adjustment of their claim outside the trust agreement.

The whole argument of the plaintiffs is built up by taking the letter or the literal wording of the twenty-fifth paragraph of the trust agreement, and rejecting the spirit of such agreement and the intention of all those who were parties to it. We think, therefore, that the learned trial judge was correct in holding that the plaintiffs failed to establish a trust for their benefit because they did not bring themselves within the provisions of the trust agreement, and that the disposition made in dismissing the complaint was right, and, accordingly, that the judgment appealed from should be affirmed, with costs. All concur, except PATTERSON and HATCH, JJ., who dissent.